

Frank G. Burt
Partner
202.230.5227 Direct
202.842.8465 Fax
Frank.Burt@dbr.com

*Law Offices*

1500 K Street, NW
Suite 1100
Washington, DC
20005-1209

202-842-8800
202-842-8465 fax
www.drinkerbiddle.com

CALIFORNIA
CONNECTICUT
DELAWARE
ILLINOIS
LONDON
NEW JERSEY
NEW YORK
PENNSYLVANIA
TEXAS
WASHINGTON D.C.

May 14, 2019

*Via ECF*

Hon. Lois Bloom
U.S. District Court
Eastern District of New York
Brooklyn Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Izmirligil v. Select Portfolio Servicing, et. al.*,
              Case No. 2:17-cv-06157-PKC-LB

Dear Judge Bloom:

      Assurant, Inc. ("Assurant") and American Security Insurance Company ("ASIC") (collectively the "Assurant Defendants") submit this Status Letter as directed by Magistrate Judge Lois Bloom on April 9, 2019 in an ECF Minute Order. Neither the Plaintiff nor Select Portfolio Servicing, Inc. ("SPS") has contacted the Assurant Defendants to participate in the "joint" status letter, presumably because the Assurant Defendants have no role in the limited jurisdictional discovery directed by Judge Bianco in a hearing on September 7, 2018. In that hearing, Judge Bianco permitted Plaintiff limited jurisdictional discovery on his purported injury, although the ASIC lender-placed insurance policy about which Plaintiff complains had been cancelled in full and all premium previously charged to his escrow account had been completely removed. In granting limited jurisdictional discovery, Judge Bianco directed the Plaintiff to review his *Spokeo*-related opinion in *Bautz v. ARS Nat. Serv. Inc.*, 226 F. Supp. 3d 131 (E.D.N.Y. 2016), and denied the Assurant Defendants' Motion to Dismiss – without prejudice to renewal of that Motion following the jurisdictional discovery.

      The facts relating to the ASIC lender-placed insurance referenced in the Complaint are not in dispute. In November 2013, ASIC sent a letter on SPS's behalf advising that Plaintiff's hazard insurance had expired, and that there was no evidence Plaintiff had obtained new coverage. Dkt. No. 17-11.[1] This November 2013 letter urged Plaintiff to "immediately provide us with your insurance information. Please contact your agent or carrier and purchase coverage." *Id.* It indicated that SPS planned to buy its own insurance,

*Established* 1849

---

[1] It was incumbent upon Plaintiff to provide *evidence* of continuous coverage. Section 5 of Plaintiffs' mortgage states that "Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give all receipts of paid premiums and renewal notices that I receive." Dkt. No. 1-8.

DrinkerBiddle&Reath LLP

May 14, 2019
Page 2

which "[m]ay be more expensive than the insurance you can buy yourself," and "not provide as much coverage as an insurance policy you buy yourself." *Id.* The letter also explained some "[t]hings to know about lender placed insurance":

- The cost of the premium may be much higher
- The coverage provided may be less than before
- The coverage may only protect the mortgage holder
- This type of policy/certificate insures your structure only
- Does not protect you against injuries that occur on your property
- Does not protect your personal property

*Id.* The November 2013 letter emphasized that "[t]here is still time to renew your policy or finalize coverage with a new company, and we urge you to do so." *Id.*

In December 2013, a "second and final notice" was sent to Plaintiff advising that there was still no evidence he had obtained insurance covering the property. Dkt. No. 17-12. The December 2013 letter contained disclosures similar to the November 2013 letter and estimated that the LPI's cost would be $10,032 annually. *Id.* It enclosed a 56-day insurance binder. *Id.*

Because proof of acceptable insurance was not provided, in January 2014 notice was given to Plaintiff that SPS had, in fact, purchased insurance. Dkt. No. 17-13. The January 2014 letter enclosed a residential policy issued by ASIC covering the period from November 1, 2013 to November 1, 2014. *Id.* This letter repeated the disclosures contained in both the November 2013 and December 2013 letters, including an explanation that Plaintiff had the right to purchase insurance from the insurance company of his choice and that the LPI "may be cancelled at any time by providing us with acceptable proof of other insurance," such that plaintiff would "only be charged for the days that this policy/certificate was necessary." *Id.*

By July 2014, Plaintiff had provided some evidence of insurance. Dkt. No. 17-14. A letter dated that month advised Plaintiff that the cancellation effective date had been adjusted to July 26, 2014. *Id.* However, the July 2014 letter continued, there was "still a lapse in coverage from 11/01/2013 to 07/26/2014." *Id.* A total charge of $7,343 was assessed to Plaintiff's escrow account for the LPI covering that period. *Id.* The letter further explained that, "to have this charge removed from your account, please provide us with evidence of insurance for this lapse period." *Id.* "Any unused premium," the letter stated, "will be refunded to your account once we receive proof of acceptable coverage." *Id.*

Plaintiff filed the instant lawsuit three years later on October 23, 2017. Exhibit 7 to his Complaint included a homeowner policy declaration page suggesting that there had been continuous coverage on the property, including between November 1, 2013 and July



May 14, 2019
Page 3

26, 2014. Dkt. No. 1-7. On this basis, before the Complaint was served on either of the Assurant Defendants, a "Lender-Placed Insurance Confirmation of Cancellation" was sent to Plaintiff. Dkt No. 17-14. This October 2017 letter explained that the "Named Insured Mortgagee/Lender" had "requested cancellation of the lender-placed insurance that was issued in compliance with your mortgage/lien agreement. This cancellation is effective at 12:01 a.m. on 11/01/2013." *Id.* Plaintiff concedes that the LPI has now been flat-cancelled. Dkt. No. 11 at 2.[2]

Thus, all relevant documentation relating to the Assurant Defendants entire relationship to this dispute is already in the record, and no additional jurisdictional discovery could be obtained from the Assurant Defendants.

Respectfully submitted,
DRINKER BIDDLE & REATH LLP

By: _____
Frank Burt (pro hac vice)
Frank.Burt@dbr.com
Brian Perryman (pro hac vice)
Brian.Perryman@dbr.com
1500 K Street, N.W., Suite 1100
Washington, D.C. 20005
(202) 842-8800

Kate L. Villanueva
Kate.Villanueva@dbr.com
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: 215-988-2700
Facsimile: 215-988-2757

---

[2] Plaintiff initially argued that the premium charges for lender-placed insurance had not been removed from his escrow account based on a mistaken review of the transactions in that account. SLS then filed an analysis of the specific charges identified by Plaintiff demonstrating this error. Dkt. No. 25.



May 14, 2019
Page 4

*Attorneys for Defendants Assurant, Inc. and*
*American Security Insurance Company*

cc: Hon. Pamela K. Chen