UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ARIF S. IZMIRLIGIL,

                Plaintiff,

        - against -

SELECT PORTFOLIO SERVICING, INC.,
ASSURANT, INC., and AMERICAN
SECURITY INSURANCE COMPANY,

                Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-6157 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Arif Izmirligil, proceeding *pro se*,[1] brings this action against Defendants Select Portfolio Servicing, Inc. ("SPS"), Assurant, Inc., and American Security Insurance Company ("ASIC"), alleging civil violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.*, as well as various state law causes of action. Pending before the Court are Defendants' motions to dismiss for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim, as well as Plaintiff's motion to amend. For the reasons set forth below, the Court grants Defendants' motion. Furthermore, though the Court denies Plaintiff's motion to amend, it does grant Plaintiff leave to file an amended complaint as described herein.

---

[1] Plaintiff was represented by counsel when he initiated this action. (*See* Complaint ("Compl."), Dkt. 1, at 57.) In December 2018, Plaintiff retained new counsel. (Notice of Appearance by Karamvir Dahiya, Dkt. 39.) However, as of May 20, 2019, Plaintiff has been prosecuting this action *pro se.* (May 20, 2019 Docket Order, Dkt. 51.)

# BACKGROUND

## I.     Relevant Facts[2]

In 2006, Plaintiff obtained a mortgage loan, in the original principal amount of $1,100,000, secured by his home in Miller Place, New York ("the Property").  (Compl., Dkt. 1, ¶ 45.)  Plaintiff was sent an acceleration warning in July 2009 stating Plaintiff was in default as of May 1, 2009.  (Complaint Exhibit ("Compl. Ex.") 10, Dkt. 1-10, at ECF[3] 2.)  Plaintiff disputes that he was in default at that time.  (*See* Compl., Dkt. 1, ¶ 68.)  Therefore, when Plaintiff filed the instant action, he was already a defendant in a state foreclosure proceeding that was been initiated in 2009 because that default ("the 2009 Foreclosure Action").  (*Id.* ¶¶ 31, 34.)  Plaintiff is seeking to dismiss that 2009 Foreclosure Action.  (*Id.*)

Defendant SPS began servicing Plaintiff's mortgage loan on November 1, 2013.  (*Id.* ¶ 53.)  On November 11, 2013, Defendant SPS notified Plaintiff that its records reflected that the Property did not have the required hazard insurance policy and that SPS therefore planned to buy such an insurance policy on Plaintiff's behalf ("Lender-Placed Insurance Policy" or "LPI Policy").  (Declaration of Ronald K. Wilson ("Wilson Dec.") Exhibit A, Dkt. 17-11, at ECF 3–4.)  Though Plaintiff sent information to Defendant SPS indicating that he did have a hazard insurance policy in December 2013 (Compl. Ex. 5, Dkt. 1-5; Compl., Dkt. 1, ¶ 27), SPS proceeded to issue an LPI Policy on Plaintiff's Property effective November 1, 2013 (Wilson Dec. Exhibit B, Dkt. 17-12, at ECF 4; Wilson Dec. Exhibit C, Dkt. 17-13, at ECF 3–4; Compl., Dkt. 1, ¶¶ 69–71).  The LPI Policy

---

[2] In adjudicating a motion to dismiss for lack of subject matter jurisdiction, the court may consider matters outside the pleadings.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

was issued by Defendants Assurant and ASIC, and had an annual premium of $10,032.  (Compl., Dkt. 1, ¶¶ 27, 44; *see also* Compl. Ex. 4, Dkt. 1-4.)  Plaintiff alleges that the LPI Policy was placed as a part of "[a]n undisclosed exclusive arrangement [] between SPS and Assurant and ASIC to manipulate the forced-placed insurance process and 'artificially' inflate the amounts charged to [Plaintiff]."  (Compl., Dkt. 1, ¶ 38; *see also id.* ¶¶ 41, 44.)

Payments for the LPI Policy were assessed against Plaintiff on January 14, 2014, February 5, 2014, March, 10, 2014, April 1, 2014, May 6, 2014, June 3, 2014, and June 30, 2014, totaling $7,524.  (Defendant SPS Supplemental Brief ("SPS Supp. Br."), Dkt. 70, at ECF 8; *see also* Compl. Ex. 9, Dkt. 1-9, at ECF 4.)  In July 2014, after receiving confirmation that Plaintiff had the required insurance, SPS cancelled the LPI Policy.  (Compl., Dkt. 1, ¶ 86; *see also* Compl. Ex. 15, Dkt. 1-15, at ECF 3.)  $181 of the LPI Policy charges was refunded to Plaintiff on July 14, 2014.  (SPS Supp. Br., Dkt. 70, at ECF 8.)  The remaining LPI Policy charges were refunded to Plaintiff on November 2, 2017.  (*Id.* at ECF 9.)

## II.   Plaintiff's Claims

Plaintiff brings a total of seven claims, two of which are based on federal law.  (*See generally* Compl., Dkt. 1, ¶¶ 89–220.)  Plaintiff's federal law claims allege RICO conspiracy and a substantive RICO violation.  (*Id.* ¶¶ 162–220.)  Specifically, Plaintiff asserts that Defendants engaged in a RICO enterprise with the common purpose of "increase[ing] and maximiz[ing] their revenues by fraudulently forcing Plaintiff and other victims to pay fraudulently inflated— unreasonably high amounts for force-placed insurance through a scheme that inflated such charges to cover briberies, kickbacks, and expenses . . . ." (*id.* ¶ 168), and that Defendants engaged in a RICO conspiracy to commit this illegal conduct (*id.* ¶¶ 209–220).  Plaintiff also asserts various state law claims against different Defendants, all of which relate to the imposition of the LPI Policy

and premiums paid for that policy.  (*Id.* ¶¶ 89–161 (asserting claims for, *inter alia*, breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing).)

## III.  Procedural History

Plaintiff initiated the instant action on October 23, 2017.  (Compl., Dkt. 1.)  At a pre-motion conference on December 11, 2017, the Honorable Joseph F. Bianco granted Defendants permission to file a motion to dismiss.  (Dec. 11, 2017 Minute Entry.)  Defendants' motions were fully briefed on March 16, 2018.  (*See* Dkts. 17–21.)  Judge Bianco held oral arguments on Defendants' motions on April 16, 2018 and September 7, 2018.  (*See* Apr. 18, 2018 Minute Entry; Sept. 7, 2018 Docket Order; *see also* Sept. 14, 2018 Minute Entry.)  At the September 7, 2018 oral argument, Judge Bianco denied Defendants' motions to dismiss without prejudice to renew to allow the parties to conduct limited discovery as to whether Plaintiff had standing.  (Sept. 7, 2018 Oral Argument Transcript, Dkt. 60, at 14–15.)  On December 11, 2018, Plaintiff filed a second federal action, *Izmirligil v. Select Portfolio Services*, 18-CV-7043 (PKC) (LB) ("the 2018 Action"), which is also pending before this Court, solely against Defendant SPS alleging claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, and its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024 *et seq.*, as well as the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.  See generally* Complaint, *Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-CV-7043 (PKC) (LB) (E.D.N.Y. Dec. 11, 2018), ECF No. 1.

On March 21, 2019, this action was reassigned to the undersigned.  (Mar. 21, 2019 Docket Order.)  After the parties conducted limited discovery as to whether Plaintiff had standing to pursue this case, the Court granted Defendants' request to renew their motions to dismiss and ordered supplemental briefing.  (Oct. 18, 2019 Docket Order.)  Plaintiff was also granted permission to file

a motion to amend his complaint.  (*Id.*)  Supplemental briefing was completed on December 16, 2019.  (Dkts. 69–74.)  On January 30, 2020, Plaintiff withdrew his proposed twelfth cause of action alleging state law mail and wire fraud.  (Jan. 30, 2020 Letter, Dkt. 75.)

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova*, 201 F.3d at 113 (2d Cir. 2000).  "When a defendant moves to dismiss for lack of standing, our standard of review depends on whether the defendant brings a 'facial' challenge, 'based solely on the allegations of the complaint' or a 'fact-based' challenge, 'proffering evidence beyond the [p]leading.'"  *Sonterra Capital Master Fund Ltd. v. UBS AG*, 2020 WL 1544478, at *2 (2d Cir. Apr. 1, 2020) (quoting *Carter*, 822 F.3d at 56–57 (2d Cir. 2016)).  "In a fact-based challenge, a defendant must proffer evidence beyond what is alleged in or attached to the complaint."  *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018) (citing *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n.6 (2d Cir. 2001)).  "In opposition to such a motion, the plaintiff[] will need to come forward with evidence of [his] own to controvert that presented by the defendant . . . ."  *Carter*, 822 F.3d at 57.  Or, a plaintiff "may instead rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing."  *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (internal quotation marks, alterations, and citation omitted).  "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).  "[T]he party asserting subject

matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"
*Id.* (quoting *Makarova*, 201 F.3d at 113).

## DISCUSSION

### I.    Defendants' Motions to Dismiss

"Under Article III of the Constitution, federal courts are empowered to adjudicate only actual, ongoing cases or controversies." *Del. Riverkeeper Network v. N.Y. State Dep't of Envtl. Conservation*, 788 F. App'x 65, 66 (2d Cir. 2019) (summary order) (quoting *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 81 (2d Cir. 1991)). "The case-or-controversy limitation on our jurisdiction, and its focus on parties' stakes in the action, manifests in three distinct legal inquiries: standing, mootness, and ripeness." *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 221 (2d Cir. 2018), *cert. dismissed sub nom. Cadian Capital Mgmt., LP v. Klein*, 139 S. Ct. 1406 (2019). At issue in this action are the related inquires of standing and mootness. "[S]tanding doctrine evaluates a litigant's personal stake as of the outset of litigation." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) (internal quotation marks, alteration, and citation omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992). On the other hand, the "[m]ootness doctrine determines what to do '[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation' after its initiation." *Klein*, 906 F.3d at 221 (citation omitted) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

Defendants argue that Plaintiff lacks standing to bring the instant action because all LPI Policy charges have been removed from his account. (SPS Supp. Br., Dkt. 70, at ECF 4–5; Defendants ASC and Assurance Supplemental Brief ("Assurance & ASIC Supp. Br."), Dkt. 69, at

1–2.)  Though the Court disagrees that Plaintiff lacks standing, it nonetheless finds that dismissal is appropriate because Plaintiff's claims are moot.

### A.      Standing

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).  "Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 361 (2d Cir. 2003) (internal quotation marks and citation omitted).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  Constitutional standing requires

> (1) that the plaintiff have suffered an 'injury in fact'—that is, 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) that there is 'a causal connection between the injury and the conduct' of which the plaintiff complains; and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560–61).

Defendants argue that Plaintiff is unable to show that he suffered an injury given that he never paid the LPI Policy charges and those charges have since been removed from Plaintiff's account.  (SPS Supp. Br., Dkt. 70, at ECF 4–5; Assurance & ASIC Supp Br., Dkt. 69, at 1–2.)  The Court disagrees; the fact that Plaintiff did not pay any of the LPI Policy charges is not dispositive of the standing question.

It is clear that Plaintiff never paid any of the LPI Policy charges because they were only assessed between January and June 2014 (SPS Supp. Br., Dkt. 70, at ECF 8; Compl. Ex. 9, Dkt. 1-9, at ECF 4) and Plaintiff's last loan payments were made in July 2009 (Compl., Dkt. 1, ¶ 6).

However, the question of whether Plaintiff has suffered an injury is not necessarily limited to the question of whether he paid the LPI Policy charges. "'A credible threat of enforcement' can be enough to demonstrate standing." *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 191 (S.D.N.Y. 2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 59 (2014)).

Here, though Plaintiff never paid the LPI Policy charges, the majority of those charges remained on his mortgage account until November 2, 2017.  (SPS Supp. Br., Dkt. 70, at ECF 9.) Plaintiff initiated this instant action on October 23, 2017 (*see generally* Compl., Dkt. 1), a few weeks before the remaining LPI Policy charges were removed.  Therefore, at the time that Plaintiff filed this action, the LPI Policy charges were still on Plaintiff's account and therefore could have been included in the total debt that Defendants would seek to collect from Plaintiff as part of the 2009 Foreclosure Action. *Cf. HSBC Bank USA, Nat'l Ass'n v. Cherestal*, 113 N.Y.S.3d 206, 209 (App. Div. 2019) (noting that hazard insurance disbursements were included as part of the total debt owed to the foreclosing plaintiff).

Defendants' argument to the contrary is unavailing.  They rely on *Spiro v. Healthport Techs., LLC* where the Honorable Paul A. Engelmayer found that the plaintiffs who had not paid the fines at issued lacked standing.  73 F. Supp. 3d 259, 267–70 (S.D.N.Y. 2014).  However, in that case, by the time the lawsuit was filed, the fines had already been paid by a third-party. *Id.* at 267–68.  There, the issue was whether plaintiffs' reimbursement of the third-party was sufficient to grant them standing to challenge the fines. *See id.* at 268.  Judge Engelmayer found that since the plaintiffs had voluntarily reimbursed the third party for the fines, they did not have standing to challenging the legality of the fines. *Id*.  Judge Engelmayer explained:

> On these facts, any legal right to challenge defendants' ostensible overcharging would belong exclusively to [the third party], as it was [the third party], and [the third party] alone, who suffered an injury *caused* by defendants' overcharging. Plaintiffs' later decision to reimburse their lawyer, and [the third party's] decision

to accept such reimbursement, must be taken as independent, volitional, discretionary acts, breaking the chain of causation necessary to establish Article III standing.

*Id.* (citation omitted).

In contrast, here, no one had paid the LPI Policy charges prior to Plaintiff initiating this action, and, therefore, it can plausibly be inferred that, at the time Plaintiff filed this lawsuit, Defendants were still seeking to collect those charges from him. This "credible threat of enforcement" is sufficient to constitute an injury for the purposes of Plaintiff's standing in this matter. *Farina*, 409 F. Supp. 3d at 191; *see Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1307–08 (S.D. Fla. 2014) (finding that plaintiff who did not pay LPI charges still had standing when "it is undisputed that [plaintiff]'s account has already been charged for the force-placed insurance premiums. If [plaintiff] is successful in this action [challenging the force-placed insurance charges], her total debt may be reduced").

### B.      Mootness

However, as noted *supra*, "[a] corollary to this case-or-controversy requirement is that an actual controversy must be extant at *all* stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp.*, 569 U.S. at 71–72 (internal quotation marks and citation omitted) (emphasis added). Therefore, "[i]n order to satisfy the case-or-controversy requirement [of Article III], a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Williams*, 475 F.3d 468, 478–79 (2d Cir. 2007) (internal quotation marks and citation omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp.*, 569 U.S. at 72 (internal quotation marks and citation omitted). Put another way, "[a] case

is moot if our decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Del. Riverkeeper Network*, 788 F. App'x at 66 (quoting *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 12 (D.C. Cir. 2019)); *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) ("[M]ootness is 'standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).  When the plaintiff no longer maintains a "personal stake" in the litigation, a court lacks subject matter jurisdiction over the action and the case must be dismissed.  *Gallagher v. Sullivan*, No. 15-CV-1327 (TJM) (TWD), 2018 WL 4610677, at *2 (N.D.N.Y. Apr. 23, 2018), *report and recommendation adopted*, 2018 WL 3991492 (N.D.N.Y. Aug. 21, 2018).

Given that Defendants have removed all LPI Policy charges from Plaintiff's account, all of Plaintiff's claims are moot.  Plaintiff's "personal stake" in this action was that he might be forced to pay these purportedly invalid charges in the state foreclosure action.  (*See* Compl., Dkt. 1, at 56–57.)  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 492 (S.D.N.Y. 2018) (quoting *Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)).  Now that these charges have been removed from Plaintiff's account, they cannot be included in any debt that Defendants might seek to collect in the underlying foreclosure action.  *See Osipova v. N.Y.C. Dep't of Health*, No. 02-CV-5072 (LMM), 2002 WL 1836835, at *2 (S.D.N.Y. Aug. 12, 2002) (finding a case moot when, even if defendants had previously tried to collect a fine, the evidence showed that the fine would be deemed "uncollectible" and would therefore not be pursued in the future); *Air Espana v. Una Brien*, No. 95-CV-1650 (ILG), 1997 WL 469992, at *15 (E.D.N.Y. June 18, 1997) (finding

that claims based on fines that had been cancelled were moot), *aff'd in part and vacated in part sub nom. Air Espana v. Brien*, 165 F.3d 148 (2d Cir. 1999).

Relying on *Wieck v. CIT Group, Inc.*, 308 F. Supp. 3d 1093 (D. Haw. 2018), Plaintiff argues that Defendants' "failure to tender the full amount of refund that include[s] Plaintiff's additional damages, attorney fees, expert witness fees, and litigation costs" means that Plaintiff still possesses a personal stake in the litigation.[4] (Pl.'s Supp. Br., Dkt. 74, at 4 (internal quotation marks omitted).) However, *Wieck*'s holding is inapplicable here. The plaintiff in *Wieck* alleged that her injury consisted not just of the LPI charges and interest, which defendants purportedly had refunded, but also additional expenses and fees incurred while defending against "a foreclosure complaint in state court based on the accrued LPI charges." *Wieck*, 308 F. Supp. 3d at 1108. Here, Plaintiff does not allege that Defendants initiated the foreclosure because of Plaintiff's failure to pay the LPI Policy charges. In fact, the foreclosure paperwork provided by Plaintiff shows that he was in default for failing to make his mortgage loan payments. (*See* Compl. Ex. 10, Dkt. 1-10, at ECF 2.) Accordingly, it is clear that the injuries Plaintiff alleges he incurred as a result of the LPI Policy have been remedied and his claims based on that Policy are now moot.

Plaintiff's additional argument to the contrary is equally unavailing.[5] He argues that Defendants' "voluntary cessation" of assessing the LPI Policy charges is not enough divest this

---

[4] Plaintiff makes his argument in terms of standing, but, as discussed *supra*, the more appropriate inquiry is as to mootness.

[5] Plaintiff also argues that Defendants are "still charging and attempting to collect illegal fees, unlawfully" including "charges of the previous attorney's fees, property inspection fees, property valuation fees, [and] litigation costs in the amount of $7,443.00," as well as more than $100,000 in other fees and expenses. (Pl.'s Supp. Br., Dkt. 74, at 4–5.) Plaintiff also seems to contest Defendants' right to collect the underlying mortgage loan debt arguing that the loan is void *ab initio*. (*Id.* at 5.) To the extent that Plaintiff argues that these sums of money are part of the LPI Policy charges assessed by Defendants, the evidence does not support that assertion. First, the Court notes that none of these sums were alleged in Plaintiff's complaint. (*Cf.* Compl., Dkt.

Court of subject matter jurisdiction. Specifically, he argues that even though Defendants have removed the LPI Policy charges from Plaintiff's account, they have not changed their requests in a pending motion for an order of reference in the underlying foreclosure action. (Pl.'s Supp. Br., Dkt. 74, at 3, 5–6.) "Under Second Circuit case law, '[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that . . . there is no reasonable expectation that the alleged violation will recur . . . .'" *Rivers v. Doar*, 638 F. Supp. 2d 333, 337 (E.D.N.Y. 2009) (quoting *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004)). Plaintiff's argument fails because an order of reference does not determine the amount of debt Plaintiff actually has to pay. It merely allows the judge presiding over the foreclosure action to ask a judicially-appointed referee to determine how much a foreclosure defendant owes before signing a final order of foreclosure and sale. *See HSBC Bank USA v. Clayton*, 45 N.Y.S.3d 543, 544 (App. Div. 2017) (noting that an order of reference refers "the matter to a referee to compute the amount due and owing under the loan"); *see also* N.Y. Real Prop. Actions and Proc. Law § 1321. Given that, as Plaintiff admits, the judge has not yet signed the order of reference, and Defendants removed the LPI Policy charges from Plaintiff's mortgage account in November 2017, there is no way that Defendants can try and collect on these charges, as the record submitted to the referee will show that the LPI Policy charges have been removed.

---

1, ¶ 2 (alleging that Plaintiff was charged $10,032 per annum for the LPI Policy).) *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks and citation omitted). Moreover, there is no evidence to connect any of these amounts to the LPI Policy charges. To the extent Plaintiff is discussing sums unrelated to the LPI Policy charges that Defendants may still be attempting to collect in the underlying foreclosure action, the question of whether Defendants have refunded these amounts is irrelevant to the Court's mootness analysis because Plaintiff's claims are premised on the purportedly illegally assessed LPI Policy charges, as described in the original complaint. (*See* Compl., Dkt. 1, ¶ 1 (describing the nature of the action as "relating to Defendants['] misconduct and wrongdoing in procuring and issuing a forced placed insurance policy on his residence").)

*See Citimortgage, Inc. v. Kidd*, 49 N.Y.S.3d 482, 484 (App. Div. 2017) (noting that a referee's report must be "substantially supported by the record"); *see also Excel Capital Grp. Corp. v. 225 Ross St. Realty, Inc.*, 87 N.Y.S.3d 604, 607 (App. Div. 2018) (noting that "a dispute as to the total amount of indebtedness . . . is properly raised before the referee in computing the amount due").

The same is true for Plaintiff's argument that Defendants are still seeking to collect interest on these LPI Policy charges. (Pl.'s Supp. Br., Dkt. 74, at 3 (arguing that Defendants still seek to collect "more than 65[,]000.00" in interest through an order of reference in the underlying state foreclosure); *see also id.* at 4 (alleging that Defendants have not refunded "illegally accumulated interest . . . in the amount of $2,142.65").)  First, the Court notes that none of the evidence shows a charge for interest as Plaintiff contends.  To the extent that interest will be calculated and included as part of Plaintiff's total debt in the underlying foreclosure action, there is no evidence to suggest that Plaintiff will be charged for interest on the LPI Policy charges given that the underlying LPI Policy charges themselves have been removed.  (*Cf.* SPS Supp. Br., Dkt. 70, at ECF 4 n.4.) Therefore, Defendants have adequately demonstrated that their removal of the LPI Policy charges from Plaintiff's account means that "there is no reasonable expectation that the alleged violation will recur[.]" *Lamar Advert. of Penn, LLC*, 356 F.3d at 375.

\*     \*     \*

Accordingly, the Court finds that all of Plaintiff's claims based on the alleged illegal imposition of LPI Policy charges, are moot given that Defendants have fully refunded all relevant charges.  The Court therefore does not have subject matter jurisdiction over these claims.[6]

---

[6] Though Plaintiff asserts that his claims are based on "Defendants['] misconduct and wrongdoing in procuring and issuing a forced placed insurance policy on his residence" (Compl., Dkt. 1, ¶ 1), he appears to include allegations in his state law claims against Defendant SPS based on actions taken by SPS unrelated to the imposition of the LPI Policy (*see id.* ¶ 95 (alleging that Defendant SPS breached Plaintiff's mortgage contract by failing to apply $51,000 in payments

towards Plaintiff's Loan); *id.* ¶¶ 110–11, 118–19 (alleging that Defendant SPS breached the implied covenant by failing to apply or misapplying $51,000 in payments towards Plaintiff's Loan and proceeding with the 2009 Foreclosure Action despite these errors); *id.* ¶ 145 (alleging that Defendant SPS breached its fiduciary duty by using Plaintiff's escrow funds to pay attorney's fees and costs related to the 2009 Foreclosure Action even though Plaintiff was not in default at the time the foreclosure proceeding started and by profiting from the foreclosure proceeding even though it was commenced through the use of forged mortgage documents)). To the extent Plaintiff intended to bring these separate state law claims, the Court declines to exercise supplemental jurisdiction over them. First, it is unclear that the Court could exercise supplemental jurisdiction over these claims, since they appear wholly unrelated to the imposition of the allegedly fraudulent LPI Policy, which is the crux of Plaintiff's now-mooted federal claims. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (stating that a district court should exercise supplemental jurisdiction over state law claims that "derive from a common nucleus of operative fact"); *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (noting that "pendent jurisdiction [was] lacking when the federal and state claims rested on essentially unrelated facts"). Second, even assuming *arguendo* that the Court could exercise supplemental jurisdiction over these claims, it would decline to do so, given that it has dismissed all of the claims over which the Court would have original jurisdiction, *i.e.*, Plaintiff's RICO Act claims. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.") (internal quotation marks and citation omitted); *see also Page v. U.S. Agency for Glob. Media*, 797 F. App'x 550, 556 (2d Cir. 2019) (summary order) (finding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction when "the court considered judicial economy, convenience, fairness, and comity and reasoned that supplemental jurisdiction was not warranted given the early stage of the proceedings") (internal quotation marks, alterations, and citations omitted).

However, given that Plaintiff is granted leave to file an amended complaint that might contain federal claims under various federal consumer protection statutes that could give the Court federal question jurisdiction, Plaintiff is granted leave to include the state law claims against Defendant SPS that "derive from a common nucleus of operative facts" as to any new federal claims, as long as they are not factually related to the imposition of the LPI Policy. However, as described in more detail *infra*, Plaintiff is cautioned that any claims based on theories or arguments that have been, or will be, addressed by the underlying state foreclosure action will likely be barred by the *Rooker-Feldman* doctrine and/or the *Colorado River* doctrine, both of which place limits on a federal court's ability to interfere with state court proceedings. Accordingly, Plaintiff should take care to only allege state law claims that do not implicate issues that have been or will be determined by the state foreclosure proceeding, such as whether Plaintiff was actually in default at the time the foreclosure action was initiated.

## II.      Plaintiff's Motion to Amend[7]

Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely given when justice so requires." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 15(a).  "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile."  *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (citations omitted); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2006) (noting that a motion to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies . . . , or undue prejudice to the non-moving party") (citation omitted).  "Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted).  However, in determining whether Plaintiff's proposed new claims are futile, "courts need not determine futility based only on an assessment of the proposed amendments—that is, the complaint presented to the court for its consideration."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order) (citation omitted).  "Instead, courts may consider all possible amendments when determining futility."  *Id.*  Furthermore, "[t]he Second Circuit has made clear that district courts 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  *Ramnarine v. Johnson*, No. 19-CV-5544 (PKC) (LB), 2019 WL 5309994, at *3

---

[7] Though the Court finds that it does not have subject matter jurisdiction over Plaintiff's currently pled claims, it nonetheless addresses whether to grant Plaintiff permission to amend his complaint as many of his new claims allege injuries beyond the imposition of an illegal LPI Policy.

(E.D.N.Y. Oct. 21, 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, if the Court finds that Plaintiff's proposed claims could withstand a motion to

dismiss, if he, in good faith, could allege additional facts, the Court will grant Plaintiff leave to

amend that claim anew.

Plaintiff seeks to add four new claims: (1) an FDCPA claim based on recent mortgage and

payoff statements sent by SPS; (2) a RESPA claim based on SPS's failure to adequately respond

to an August 2019 Qualified Written Request ("QWR"); (3) a Truth in Lending Act ("TILA")

claim based on SPS's failure to provide accurate information; and (4) a New York Judiciary Law

§ 487 claim against Samuel P. Trumbull, Esq., one of the lawyers who prosecuted the underlying

state foreclosure action.[8]  (Proposed Amended Complaint ("PAC"), Dkt. 68-1, ¶¶ 233–68.)  The

Court addresses each proposed claim in turn.

### A.    Plaintiff's FDCPA Claim

Plaintiff seeks to add an FDCPA claim against Defendant SPS for purported violations of

15 U.S.C. §§ 1692e and 1692f.  (PAC, Dkt. 68-1, ¶¶ 233–39.)  Plaintiff argues that Defendant SPS

violated these provisions of the FDCPA by sending mortgage and payoff statements that contained

illegal charges relating to Defendant SPS's prosecution of the underlying state foreclosure action.[9]

(*Id.* ¶¶ 103–05; PAC Ex. 27, Dkt. 68-2, at ECF 195–98; PAC Ex. 28, Dkt 68-2, at ECF 199–203.)

---

[8] Plaintiff originally sought to add an additional claim of mail and wire fraud pursuant to 18 U.S.C. §§ 1341, 1343, but later withdraw that claim.  (Jan. 30, 2020 Letter, Dkt. 75.)

[9] Plaintiff also alleges that Defendant SPS has stated that it will refund or credit a charge for the loan level advance balance of $7,443.00 in an August 19, 2019 letter.  (PAC, Dkt. 68-1, ¶ 103.)  However, Defendant SPS's August 19, 2019 letter only mentions this charge in relation to Plaintiff's LPI Policy-based claims, noting that though the amounts are similar, the loan level advance balance charge is not related to the LPI Policy charges that Defendant has already refunded.  (*See* Defendant SPS Response Letter to Motion to Compel, Dkt. 59.)  The letter contains no statement that Defendant will credit the loan level advance balance charge back to Plaintiff.  Accordingly, the Court disregards this aspect of Plaintiff's claim.

Plaintiff's claim is substantially similar to the FDCPA claims he raises in his 2018 Action against Defendant SPS, which SPS is seeking to dismiss along with this action.[10]

Plaintiff's proposed claim fails.  First, both the mortgage and payoff statements are addressed to Plaintiff's attorneys.  (PAC Ex. 27, Dkt. 68-2, at ECF 196; PAC Ex. 28, Dkt 68-2, at ECF 200 (stating Plaintiff's name but using the Maiden Lane address of Plaintiff's attorney).) Though the Second Circuit has not addressed this issue directly, it has noted that its "treatment of the FDCPA in other cases lead[] [it] to believe that alleged misrepresentations to *attorneys* for putative debtors cannot constitute violations of the FDCPA." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (emphasis in original).  Therefore, this Court joins several others in finding that the FDCPA does not extend to communications sent to third parties, like a debtor's attorney.  *See Williams v. Harris, Klein Assocs., Inc.*, No. 17-CV-3473 (FB) (JO), 2018 WL 5268113, at *2 (E.D.N.Y. Oct. 23, 2018); *Sandoval v. I.C. Sys.*, No. 17-CV-3755 (DLI) (ST), 2018 WL 1582218, at *2 (E.D.N.Y Mar. 29, 2018); *Vernot v. Pinnacle Credit Servs., LLC*, No. 16-CV-3163 (JFB) (SIL), 2017 WL 384327, at *5 (E.D.N.Y. Jan. 26, 2017).   Second, the August 2019 Payoff Statement is largely the same as the April 2018 Payoff Statement provided by Plaintiff in his 2018 Action.  Compl. Ex. 22 at ECF 3, *Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-CV-7043 (PKC) (LB) (E.D.N.Y. Dec. 11, 2018), ECF No. 1-22.  Though both of these statements appear to charge Plaintiff for fees and costs related to the underlying state foreclosure action, the statement also provides an explanation as to what the fees are based on, why the final balance as to those fees might be different than the sum provided in the payoff statement, and an explanation of how Defendant SPS plans to remedy any potential overpayment.  (*See* PAC Ex. 28, Dkt 68-2, at ECF

---

[10] For that reason, the Court assumes the parties' familiarity with its FDCPA analysis in Plaintiff's 2018 Action and incorporates it here.

200–01.)  This is sufficient to avoid FDCPA liability under § 1692e.  *Cf. Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216 (2d Cir. 2017); *Taubenfliegel v. EGS Fin. Care, Inc.*, No. 18-CV-1962 (ARR) (JO), 2018 WL 3079697, at *4 (E.D.N.Y. June 21, 2018) (noting that the Second Circuit, interpreting *Carlin*, "expressly rejected a requirement of exhaustive disclosure"), *aff'd*, 764 F. App'x 76 (2d Cir. 2019).  Likewise, the August 2019 Payoff Statement is insufficient to state a claim under § 1692f, because "[i]t is not unfair or unconscionable to inform plaintiff of the exact amount he owes, tell him that it may increase over time, and provide him with a way to contact the debt collector." *Taubenfliegel*, 2018 WL 3079697, at *4.  Accordingly, Plaintiff's proposed FDCPA claim fails to state a claim upon which relief can be granted.  Therefore, his motion to amend his complaint to include such a claim is futile.

However, the Court notes that the February 2019 mortgage statement does not contain the same explanatory language.  Therefore, the Court will grant Plaintiff leave to amend to the extent he can show that Defendant sent a mortgage statement to Plaintiff directly that did not adequately explain the nature of the additional charges.  *Panther Partners Inc.*, 347 F. App'x at 622 ("[C]ourts may consider all possible amendments when determining futility.").

## B.     Plaintiff's RESPA Claim

Plaintiff seeks to add a RESPA claim based on Defendant SPS's purported failure to sufficiently respond to his August 2019 QWR.  (PAC, Dkt. 68-1, ¶¶ 122–24, 240–50.)  However, as was the case with Plaintiff's RESPA claims in his 2018 Action,[11] Plaintiff's claim fails because he does not sufficiently allege that he has suffered damages as a result of Defendant's inadequate

---

[11] Given the similarities between Plaintiff's RESPA claim in this action and the 2018 Action, the Court assumes the parties' familiarity with its analysis in the 2018 Action and incorporates it here.

response.  Rather, he merely states that "SPS's violation of RESPA harmed [Plaintiff] in that [he] incurred attorney's fees, court fees, costs in having to respond to SPS's reinstatement letters, pay-off letters, printing, copying, and postage fees, uncorrected late fees, unapplied or misapplied mortgage payments, business loss, loss of retirement funds, mental anguish, embarrassment, nausea, and emesis." (*Id.* ¶ 248.)  This is insufficient to state a RESPA claim.  *See, e.g.*, *Bonadio v. PHH Mortg. Corp.*, No. 12–CV–3421 (VB), 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) ("Simply saying that . . . the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused, is not enough to survive a motion to dismiss.") (internal quotation marks, alterations, and citation omitted).[12]  Accordingly, Plaintiff has failed to state a claim that can withstand a motion to dismiss and his proposed RESPA claim is therefore futile.

However, the Court will grant Plaintiff leave to amend his RESPA claim if he can allege, in good faith, that Defendant SPS's failure to sufficiently respond to his August 2019 QWR caused him actual damages.

### C.    Plaintiff's TILA Claim

Plaintiff also seeks to bring a TILA claim based on Defendant's purported failure to "accurately and fully disclose the terms of the legal obligations between the parties" pursuant to 12 C.F.R. § 226.17(c) and "by failing to provide [Plaintiff] with periodic mortgage statements which provide accurate information concerning the amount due."  (PAC, Dkt. 68-1, ¶¶ 254, 256.) Plaintiff alleges that as a result of Defendant SPS's purported TILA violations, "he has been

---

[12] Plaintiff asserts that he is entitled to statutory damages because Defendant SPS engages in a "pattern and practice of violating RESPA."  (PAC, Dkt. 68-1, ¶ 250.)  As this claim is the same as the one alleged in Plaintiff's 2018 Action, it fails for the same reason.

injured and suffered a monetary loss" and that he is therefore entitled to actual, statutory, and punitive damages.  (*Id.* ¶¶ 257–58.)  Plaintiff's allegations are insufficient to state a TILA claim.

Plaintiff first alleges that Defendant SPS violated TILA's disclosure requirements by failing to "accurately and fully disclose the terms of the legal obligations between the parties."  (*Id.* ¶ 254.) Plaintiff relies on 12 C.F.R § 226.17(c) in support of his claim.  However, § 226.17 requires that *creditors* make certain general disclosures.  Though Plaintiff alleges that Defendant SPS is a creditor (*id.* ¶ 253), he provides no factual allegations to support a finding that SPS, a mortgage servicer, is a creditor, as defined by TILA.  *See* 12 C.F.R. § 226.2 (defining "creditor" as "[a] person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract"); *see Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 105 (D.S.C. 2009) (finding that a servicer is not a creditor under TILA's definition and therefore not subject to the disclosure requirements of 12 C.F.R. § 226.17); *see also Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013).  Furthermore, though TILA obligations can extend to a servicer if the servicer is or was the owner of the debt, Plaintiff has not alleged any facts to show that SPS ever owned Plaintiff's mortgage loan.  *See Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 418 (E.D.N.Y. 2013) (dismissing a TILA claim when "plaintiff has proffered no evidence that [the debt servicer] ever was the owner of plaintiff's debt").  Accordingly, Plaintiff's first proposed TILA claim fails.

Second, Plaintiff's other proposed TILA claim, based on the periodic mortgage statements provided by Defendant SPS, fails because Plaintiff has failed to adequately state damages related to that claim.  Plaintiff alleges that he is entitled to statutory damages.  (PAC, Dkt. 68-1, ¶ 258.)

However, "TILA only provides statutory damages for violations of certain specifically enumerated provisions." *Rubinstein v. Dep't Stores Nat. Bank*, 955 F. Supp. 2d 260, 262 (S.D.N.Y. 2013) (citing 15 U.S.C. § 1640(a)). "Courts in this district have consistently disallowed statutory damages for violations of provisions of the TILA that are not enumerated in Section 1640(a)." *Id.* (collecting cases). The same is true for purported violations of regulations promulgated under TILA, *i.e.*, a plaintiff is entitled to statutory damages for a violation of a TILA regulation only if that violated regulation is promulgated pursuant to a statutory provision that authorizes statutory damages. *Id.*; *see also Schnall v. HSBC Bank Nevada, N.A.*, No. 11-CV-8942 (PAC), 2013 WL 1100769, at *4 (S.D.N.Y. Mar. 18, 2013); *Schuster v. Citibank (South Dakota), N.A.*, No. 00-CV-5949 (LMM), 2002 WL 31654984, at *3–4 (S.D.N.Y. Nov. 21, 2002). Here, Plaintiff alleges that Defendant SPS violated 12 C.F.R. § 1026.41 (PAC, Dkt. 68-1, ¶¶ 255–56) which is promulgated under 15 U.S.C. § 1638(f). *See Hill v. DLJ Mortg. Capital, Inc.*, 689 F. App'x 97, 98 (2d Cir. 2017) (summary order) (noting that 12 C.F.R. § 1026.41 is implemented pursuant to 15 U.S.C. § 1638(f)). However, TILA does not allow for statutory damages pursuant to § 1638(f). 15 U.S.C. § 1640(a); *see also Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148 (FPG), 2019 WL 162743, at *11 (W.D.N.Y. Jan. 10, 2019) ("Defendants are correct that statutory damages are not available for claims brought for violations of TILA under 15 U.S.C. [§] 1638(f).") (quoting *Marais v. Reimer Law Co.*, No. 17-CV-922 (EAS), 2018 WL 1911251, at *2 (S.D. Ohio Apr. 23, 2018)). Accordingly, Plaintiff is not entitled to statutory damages for this claim.

Plaintiff also alleges that he is entitled to actual damages for the alleged TILA violation. (PAC, Dkt. 68-1, ¶¶ 257–58.) Though TILA allows for the recovery of actual damages, courts in the Second Circuit have held that a plaintiff "must show detrimental reliance to establish actual damages," *i.e.*, "that actual damages are only available if the plaintiff actually relied to his

detriment on the allegedly incomplete or inaccurate disclosures." *Schuster*, 2002 WL 31654984, at *3 (citing to Fifth, Sixth, Eighth, Ninth, and Eleventh Circuit cases that have adopted a detrimental reliance rule); *see also Jackling*, 2019 WL 162743, at *11.  Plaintiff has not alleged any facts to show that he detrimentally relied on the mortgage statements sent by Defendant SPS.

Accordingly, since Plaintiff has not shown that he is entitled to damages for any purported violation of TILA, he has failed to adequately allege a TILA claim, and this claim is therefore futile.  However, the Court will grant Plaintiff leave to amend his TILA claim if he can show, in good faith, that he detrimentally relied on Defendant SPS's mortgage statements.

### D.    Plaintiff's New York Judiciary Law § 487 Claim

Finally, Plaintiff also seeks to add a claim under New York Judiciary Law § 487 ("§ 487") against Samuel Trumbull for "deceitfully chang[ing] the mandatory language of the Administrative Order 431/11 ('AO/431/11')[13] by redacting the most important line at the end of its second paragraph . . . ."  (PAC, Dkt. 68-1, ¶ 262.)  "Judiciary Law § 487 makes liable in a civil action any 'attorney or counselor' who '[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party.'"  *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-CV-1781 (PGG), 2019 WL 5103885, at *27 (S.D.N.Y. Oct. 11, 2019) (quoting N.Y. Judiciary Law § 487(1)).  "[N]umerous New York State courts interpreting

---

[13] Administrative Order 431/11 requires attorneys litigating foreclosure actions, such as Trumbull, to file an attorney affirmation

> indicating that he or she communicated with a representative of the [foreclosing] plaintiff, and that the representative informed the attorney that he/she/they (a) personally reviewed plaintiff's documents and records relating to this case for factual accuracy; and (b) confirmed the factual accuracy of the allegations set forth in the Complaint and any supporting affidavits or affirmations filed with the Court, as well as the accuracy of the notarizations contained in the supporting documents filed therewith.

*Bank of New York Mellon v. Izmirligil*, 42 N.Y.S.3d 270, 272–73 (App. Div. 2016).

th[is] statute, as well as federal courts construing the state court decisions, have concluded that liability attaches" under this law "only if the deceit is 'extreme' or 'egregious.'" *Ray v. Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016) (collecting cases), *as amended* (May 3, 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017). Additionally, "[a] plaintiff also has to establish that damages were caused by the deceit in order to succeed on a Section 487 claim." *Iannazzo v. Day Pitney LLP*, No. 04-CV-7413 (DC), 2007 WL 2020052, at *11 (S.D.N.Y. July 10, 2007) (citation omitted). The Court finds Plaintiff's assertion of a § 487 claim unavailing.

Plaintiff is correct that Trumbull's affirmation is missing the following language: ". . . as well as the accuracy of the notarizations contained in the supporting documents." *See Bank of New York Mellon*, 42 N.Y.S.3d at 273. However, as Trumbull's affirmation explains:

> Upon information and belief, the mortgage loan at issue in this foreclosure action did not originate with Plaintiff, but, rather, was pooled, assigned and transferred into the trust Chase Mortgage Finance Trust Series 2006-S2 (the "Trust") pursuant to a Pooling and Servicing Agreement dated as of September 1, 2006, among Chase Mortgage Finance Corporation as Depositor, JP Morgan Chase Bank, N.A. ("Chase"), as Servicer and as Custodian, JPMorgan Chase Bank, N.A., as Paying Agent, and The Bank of New York, as Trustee – all prior to commencement of this action. Accordingly, Diane Weinberger[14] was unable to confirm that the underlying documents previously filed with the Court have been properly reviewed or notarized by the prior servicer.

(Defendant's Response Brief Exhibit, Dkt. 73-1, at ECF 2–3.) Trumbull's affirmation also provides a similar explanation as to why Weinberger cannot affirm or deny that the affidavits of service of process were properly reviewed or notarized. (*Id.* at ECF 3.) Given this information, Trumbull's affirmation is not an attempt to deceive the Court or any party, but rather attempts to explain why his affirmation does not include the standard form language seized upon by Plaintiff.

---

[14] Diane Weinberger is an SPS employee who has filed several affidavits in the underlying state foreclosure proceeding. (PAC, Dkt. 68-1, ¶ 8.)

Accordingly, the Court finds that Plaintiff has failed to state a § 487 claim against Trumbull and his motion to amend based on that claim is therefore futile.

However, Plaintiff also alleges, in a conclusory fashion, that Trumbull filed additional documents

> with respect to the validating of the alleged debt; alleged default debt; alleged default notices under [the] mortgage and pursuant to RPAPL [Real Property Actions and Proceedings Law] Sections 1303 and 1304; along with [a] false affidavit of merit and false affidavit of service in order to obtain a default judgment against [Plaintiff] that is legally impossible.

(PAC, Dkt. 68-1, ¶ 263.)  Plaintiff does not provide any of these additional documents that he alleges contain false statements, nor does he explain what was specifically false about these statements.

Accordingly, the Court finds that Plaintiff has failed to state a § 487 claim.  However, it will grant Plaintiff leave to amend if he can, in good faith, allege that Trumbull violated § 487 based on any of the documents that he filed in the underlying foreclosure action.  In deciding whether he can state such a claim in good faith, Plaintiff should be mindful that any claims against Trumbull based on theories or arguments that have been, or will be, addressed by the underlying state foreclosure action will likely be barred by the *Rooker-Feldman* doctrine, which "establishes the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments," *Edwards v. McMillen Capital, LLC*, 952 F.3d 32, 35 (2d Cir. 2020) (internal quotation marks and citations omitted), and/or the *Colorado River* doctrine, which counsels federal courts to "abstain from exercising jurisdiction over an action for which there is a parallel state court proceeding based on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" *Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.*, No. 19-CV-3868 (ER), 2020 WL 1503558, at *5

(S.D.N.Y. Mar. 30, 2020) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)).

*     *     *

For the reasons discussed *supra*, the Court finds that all of Plaintiff's proposed additional claims fail to state a claim. Accordingly, the Court denies, as futile, Plaintiff's motion to amend the complaint. However, the Court finds that it is possible that Plaintiff could allege additional facts in support of his FDCPA, RESPA, TILA, and § 487 claims as discussed *supra*. Accordingly, the Court will grant Plaintiff one more opportunity to file an amended complaint that addresses the deficiencies raised by the Court in this Memorandum and Order.

**CONCLUSION**

For the reasons stated above, the Court finds that it does not have subject matter jurisdiction over this matter. Accordingly, the Court grants Defendants' motion in its entirety. Additionally, the Court denies Plaintiff's motion to amend, but grants him leave to amend his FDCPA, RESPA, TILA, and/or § 487 claims, if he has a good faith basis for doing so. As these claims only relate to Defendant SPS, the Court terminates Defendants Assurant Inc. and ASIC as parties from this action.

Plaintiff shall file his amended complaint within ninety (90) days from the date of this Order. Plaintiff is advised that the amended complaint will completely replace the original complaint, must be captioned "Amended Complaint," and shall bear the same docket number as this Memorandum and Order. All further proceedings shall be stayed for 90 days or until further Order of the Court. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter judgment dismissing this action.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: April 22, 2020
        Brooklyn, New York